## Mylett's Administrator v. Burnley, Sheriff, et al.

(Decided March 2, 1915.)

### Appeal from Carlisle Circuit Court.

1. **Arrest—Authority Without Warrant—Peace Officer.—**Section 36, Criminal Code.—A peace officer may make an arrest without a

warrant when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony.

2. Arrest—Right to Kill Escaping Prisoner.—An officer is not justified in killing one in order to effect his arrest or prevent his escape on mere suspicion that he has committed a felony; in such a case he acts at his peril, and can only justify on the ground that a felony has been committed.

3. Death—Action for—Defense—Right of Officer to Kill Escaping Prisoner—Knowledge of Commission of a Felony.—In an action by plaintiff to recover of a sheriff and his deputy damages for the death of plaintiff's decedent caused by defendants while trying to effect decedent's arrest and prevent him from escaping, evidence held to show that decedent had committed a felony by breaking into a railroad car with intent to steal something of value therefrom, contrary to Section 1163, Kentucky Statutes, and defendants, being apprised of this fact, were justified in killing him in order to prevent his escape.

4. Death—Action for—Defense—Right of Officer to Kill Escaping Prisoner—Necessity—Instruction.—In an action by plaintiff to recover of a sheriff and his deputy damages for the death of plaintiff's decedent caused by defendants while trying to effect decedent's arrest and prevent him from escaping, an instruction which failed to apprise the jury that it was the duty of defendants to use all means reasonably necessary to recapture decedent before killing him, was not erroneous where the question of the necessity for killing decedent was otherwise covered by the instruction.

5. Arrest—Right to Kill Escaping Prisoner—Necessity.—Question for Jury.—A peace officer is not clothed with authority to judge arbitrarily of the necessity for killing one in order to effect his arrest or prevent his escape; he cannot kill except in case of actual necessity, and whether or not such necessity exists is a question for the jury.

6. Death—Action For—Defense—Right of Officer to Kill Escaping Prisoner—Necessity—Belief of Officer—Instruction.—In an action by plaintiff to recover of a sheriff and his deputy damages for the death of plaintiff's decedent caused by defendants while trying to effect decedent's arrest and prevent him from escaping, an instruction which authorized a finding in favor of defendants if they, in the exercise of reasonable judgment, believed it to be necessary to shoot decedent in order to prevent his escape, was not erroneous where the facts made out a case of actual necessity.

B. F. GRAZIANI, G. F. BOUGNER and J. R. EVANS for appellant.

JOHN E. KANE for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

Charging that his decedent was unlawfully shot and killed by J. R. Burnley and Wiley B. Wright, the sheriff and deputy sheriff of Carlisle County, plaintiff, John H. Bracken, as administrator of T. J. Mylett, brought this action against Burnley and Wright and their bondsmen to recover damages for his death. A trial before a jury resulted in a verdict and judgment for the defendants. Plaintiff appeals.

The facts are these:

Mylett was a railroad bridge builder, and was traveling on an Illinois Central freight train from East Cairo to Paducah. In the train was a car of onions. Slats or cleats had been nailed over the door. While en route the decedent took one of these slats off the door and used it in prying off the other slats. Having done this he entered the car. The evidence is conflicting as to whether or not the onions were in bulk or in sacks, but the weight of the evidence is to the effect that they were in sacks, and that decedent cut open some of the sacks and took therefrom some onions, which he placed in his pocket and in his valise. When remonstrated with by the trainmen he refused to leave the car. As the train was passing through the town of Wickliffe the flagman gave to the operator a message to be forwarded to the operator at Bardwell, requesting the sheriff to meet the train at Bardwell and arrest the decedent. When the train reached Bardwell the sheriff, Burnley, and his deputy, Wright, met the train, and Mylett was pointed out to them as the man who should be arrested. At the same time Burnley and Wright were informed of the fact that the man had broken into the car. On searching him they found some onions in his pocket, and also in a valise which he had requested a negro on the train to keep for him. The decedent protested vigorously against being arrested, but finally came out of the car. After he got off the officers informed him who they were, and of the fact that he was under arrest. He then began to curse and abuse the officers and told them that they could not arrest him. Finally the officers started with him towards the depot. In the meantime the engine, which had been detached from the train for the purpose of taking water, had returned, and began to start south with the train. As the officers and decedent approached the water tank just north of the depot, the train began to pull out, and had acquired a speed

of from seven to ten miles an hour. Suddenly the decedent struck Wright and jerked loose from him. He then struck at Burnley, but Wright warded off the lick. Decedent then started to run. Burnley and Wright followed him, but were unable to keep up with him. Wright then fired two shots into the ground. Decedent then jumped on the passing train, and seized hold of the ladder. While in this position a third shot was fired, which struck decedent in the back. From the effects of this shot decedent died on the following day.

Under our statute a peace officer may make an arrest without a warrant when a public offense is committed in his presence, or when he has reasonable grounds for believing that the person arrested has committed a felony. Criminal Code, Section 36. However, an officer is not justified in killing one in order to effect his arrest or prevent his escape on mere suspicion that he has committed a felony. In such a case he acts at his peril, and can justify only on the ground that a felony has been committed. Petrie v. Cartwright, 114 Ky., 103. It is insisted that the decedent had committed no felony, but that his offense was like that of a boy passing through an orchard and picking up two or three apples.

Section 1163 of the Kentucky Statutes is as follows:

"Any person who shall forcibly break and enter into any railroad depot, car factory, station house, railroad car, or express car, with intent to kill or rob any person therein, or to steal property, money, or anything of value therefrom, shall be deemed guilty of felony, and punished by confinement in the penitentiary not less than two nor more than ten years."

It will be observed that the statute makes it an offense forcibly to break into a railroad car with the intent to steal anything of value therefrom. The evidence shows that the decedent had broken into the car and had taken onions and placed them, not only in his pockets, but in a valise which he claimed as his own. Here not only the forcible breaking of the car, but the intent to steal something of value therefrom was clearly established, and there can be no doubt that decedent was guilty of a felony. Furthermore, the officers were fully apprised of these facts before they placed decedent under arrest.

Instruction No. 2 is as follows:

"The court instructs the jury that, although the jury may believe from the evidence that James R. Burnley, sheriff, and Wiley Wright, deputy sheriff, one or the other, or both, shot and killed plaintiff's decedent, yet if the jury shall further believe from the evidence that defendant Burnley was at the time sheriff of Carlisle County, and defendant Wright his deputy, and that said decedent had theretofore unlawfully broken into a railroad car with the intent to steal property therefrom, and that said Burnley, sheriff, and Wright, deputy sheriff, had reasonable grounds to believe that said decedent had unlawfully broken into such car and that said defendants had attempted to place said decedent under arrest for said offense, or had placed him under arrest therefor, and that the said decedent undertook to avoid arrest by running, or, after being arrested, undertook to escape from the defendants by running, and that it was necessary, or was believed by defendants, in the exercise of a reasonable judgment, to be necessary, for either or both the defendants to shoot decedent in order to prevent him from escaping, then, under the law, the defendants, either or both, had the right to shoot decedent, and, if necessary, to kill him in order to effect his arrest or to prevent him from escaping after he was arrested; and if the jury so believe the law is for the defendants and you should so find."

Complaint is made of this instruction because it failed to apprise the jury that it was the duty of the defendants to use all means reasonably necessary to recapture the decedent before killing him, and the court refused an offered instruction to that effect. It is true that in discussing this question the authorities lay down the rule that an officer is not justified in killing an escaped prisoner except as a last resort, and after all other means to recapture him have failed. Petrie v. Cartwright, *supra*. Others say that killing is justifiable if in no other way the escaping felon can be taken. 2 Bishop Criminal Law, Sec. 647. Others say that dangerous means should not be resorted to when the arrest can be otherwise effected. These views, however, are but varying expressions of the fundamental idea that the killing of the person arrested is justifiable only when necessary to prevent his escape. In other words, the necessity is the controlling element, whether it be expressed in one form or another. The only criticism of

which the instruction is susceptible is in the use after the words "and that it was necessary" of the clause "or was believed by the defendants in the exercise of reasonable judgment to be necessary for either or both of the defendants to shoot decedent in order to prevent him from escaping." This is not a case where the officer has the right to act merely on his own belief. The law does not clothe him with authority to judge arbitrarily of the necessity. He cannot kill except in case of actual necessity, and whether or not such necessity exists is a question for the jury. Reed v. Commonwealth, 125 Ky., 126, 100 S. W., 856; State v. Bland, 97 N. C., 438, 2 S. E., 460; Williams v. State, 44 Ala., 41; Jackson v. State, 66 Miss., 89, 14 A. S. R., 542, 5 So., 690; Lander v. Miles, 3 Oregon, 35. Taking into consideration the prisoner's conduct just prior to and subsequent to his arrest, the fact that he endeavored to strike the officers, and did strike one of them, the rapidity with which he fled, the inability of the officers to keep pace with him, his failure to stop when the shots were fired merely to frighten him, his jumping on the passing train, and the probability that even if the train had been flagged and stopped he would have been able, because of his size and fleetness, to outstrip the officers, we conclude that the evidence makes out such a case of actual necessity that the insertion of the clause referred to cannot be regarded as prejudicial.

Judgment affirmed.