**ALLEN et al. v. MILES.**

Court of Appeals of Kentucky.

Feb. 26, 1954.

446

v.

———◆———

Reed & Hines, Paducah, for appellants.

W. Dalton Greenfield, Blackburn & Blackburn, Paducah, for appellee.

DUNCAN, Justice.

This is an appeal from a judgment awarding appellee $200 for personal injury allegedly caused by appellants' negligence in causing the door of its cab to close upon her thumb. Although the amount involved is small, appellants insist that the legal principles involved are of paramount importance to appellants and other common carriers in the state. Since the judgment must be reversed, we shall consider and answer the several contentions.

The evidence discloses that appellee called appellants' cab to take her to her place of employment. Her destination was on the left side of the street going north, and at this point, the street sloped downward to the north. Appellee opened the door on the left and got out of the cab, which was a 1951 Chevrolet 4-door sedan, with the rear doors opening from the back. The position of the cab caused the door to swing open and remain in that position. From this point, the parties are in disagreement concerning the facts.

Appellee testified that she stepped from the cab and due to the fact that the curb was constructed of loose rock she held on to the doorframe for support, deposited a handbag on the curb, turned and reached back into the cab for a package, and before she could release her right hand from the door, the door slammed on her thumb. She states that she called to the driver that he had mashed her thumb but that he drove away without stopping.

Appellants' driver testified that when he arrived at appellee's destination he stopped the cab, left the motor running, and turned to open the door, but appellee had already done so. Appellee then stepped out, turned around, holding on to the door, and engaged in a friendly conversation for a few minutes; that as he turned back he saw her start to close the door with her right hand and then he heard her exclaim that her finger was mashed. He says that he then turned around to look but her finger was no longer held in the door. He asked if he could do anything for her and she stated that she would treat her injured finger in the house.

Appellants insist as their first ground for reversal that the court should have sustained their motion for a peremptory instruction, made at the conclusion of appellee's evidence and renewed at the conclusion of all the testimony.

It is a familiar rule that where there is any competent evidence, or any reasonable inference based on the evidence, to sustain an issue, the question should be submitted to the jury. Kentucky Utilities Co. v. White Star Coal Co., 244 Ky. 759, 52 S.W.2d 705.

In this case, appellee testified positively that she did not close the door and the position of the cab was such that the door would not ordinarily close of its own force. Under her version of the incident, it is a reasonable inference that the door was closed by the cab driver or by some sudden movement of the cab. Under these circumstances, the question of negligence was one for the jury.

This case is distinguishable from Wyatt v. Higgenbotham, Ky., 244 S.W.2d 750. There, the passenger was injured by the closing of the door after she had alighted from the cab and at a time while the driver was outside the cab removing packages from the trunk. The position of the driver made it impossible for him to have closed the door and there was no movement of the cab which could have caused it to close. The only possible inference under the facts of that case was that the passenger was responsible for the door closing on her finger.

Appellants further complain that the court erred by its instructions in requiring the highest degree of care with respect to appellee's safety. Appellants concede that a common carrier is under the obligation to exercise the highest degree of care toward a passenger but insists that the duty continues only until its vehicle has stopped to permit the passenger to alight. Hensley v. Braden, 262 Ky. 672, 91 S.W.2d 34, is relied upon as sustaining this contention.

The authorities in Kentucky are not altogether in agreement concerning the question of when the passenger-carrier relationship ends. The Braden case indicates that the obligation of a taxi operator, while the taxi is stopped for the purpose of permitting the passenger to alight, is to exercise only ordinary care, or care in propor-tion to the danger likely to be encountered while the vehicle is stopped, and the further duty to see that the place selected for the discharge of passengers is safe for that purpose. The later case of Southeastern Greyhound Lines v. Woods, 298 Ky. 773, 184 S.W.2d 93, indicates that a carrier's duty of exercising the highest degree of care for the safety of the passenger exists while the passenger is in transit and continues until the passenger has safely alighted from the vehicle. The latter case does not expressly overrule the Braden case, but the inconsistency in the two opinions is apparent. We think the better rule is indicated in the Woods case, and that the carrier's obligation to exercise the highest degree of care continues until the passenger has safely alighted from the vehicle.

If we accept appellee's version of the accident, she had not safely alighted but was holding on to the cab for support and was in the process of removing her packages. Under her version, the duty to exercise the highest degree of care still rested upon the carrier. On the other hand, if we accept appellants' testimony, the passenger-carrier relationship had ended and the appellee had safely alighted and was merely conversing with the driver. Under this version, the carrier was required to exercise only ordinary care.

The case presents the unusual situation by which under one view of the facts the highest degree of care is required, while under the conflicting version, only ordinary care is required. The degree of care required under the circumstances, therefore, turns upon a question of fact which only the jury can determine. The court should, therefore, have instructed the jury that if they believed the door was closed on appellee's thumb while she was holding on to the cab for support or in the process of removing her packages it was the duty of the defendant to exercise the highest degree of care; but on the other hand, if they believed that the plaintiff had safely alighted from the cab and was engaged in carrying on a conversation with the driver and was not attempting to remove her packages, the

defendant was required to exercise only ordinary care.

The instructions given by the court were erroneous, in that they required the appellants, under either version of the accident, to exercise the highest degree of care.

For the reason indicated, the judgment is reversed.